IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LINDSAY POWELL,

       Plaintiff,

v.                                      20-cv-1223 MV/KK

DENIS RICHARD MCDONOUGH,
Secretary of U.S. DEPARTMENT OF
VETERAN AFFAIRS,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Dismiss Amended Complaint for Failure to State a Claim and Memorandum in Support ("Motion to Dismiss") [Doc. 25] and Plaintiff's Opposed Motion to File Second Amended Complaint ("Motion for Leave to Amend") [Doc. 57]. The Court, having considered the motions and relevant law, finds that the Motion to Dismiss is well-taken and will be granted and the Motion for Leave to Amend is not well-taken and will be denied.

## BACKGROUND

The facts, as alleged in the Amended Complaint, are as follows. Plaintiff Lindsay Powell began working with the Albuquerque Veteran's Administration in September 2016 as a Police Officer. Doc. 16 ¶¶ 6-7. Ms. Powell "suffers from a military service-connected disability," which "affects her daily activities of sleep, and her cognitive functions," PTSD, and migraines." *Id.* ¶¶ 7-8. From September 25, 2018 to January 23, 2019, Ms. Powell "was subject to a hostile work environment," which "consisted of derogatory sexual remarks made by [her] Supervisor."

1

*Id.* ¶¶ 9-10.  "One comment that was made several times was 'Powell was giving "blow jobs" while working.'"  *Id.* ¶ 10.  During the period from November 7, 2018 through January 21, 2020, Ms. Powell "was issued a written warning," "was assigned extra duties," "was denied training," "was reassigned with no training or equipment to perform her duties," "was assigned to the VA pharmacy without training," "was subjected to multiple investigations," "was informed that she had been reassigned for reporting sexual comments," "was informed by co-workers that the Chief of Police wanted to get rid of" her, "was involuntarily detailed to the Logistic Service," and "was suspended for five days on allegations of misusing a security camera system."  *Id.* ¶¶ 11, 13-14, 17-24.  In addition, during that period her "livelihood, security and child were threatened by [her] direct line Supervisor for contacting an Officer who had filed an EEO," her "requested accommodation of a set schedule was not accommodated consistently," and her "arrest authority was suspended."  *Id.* ¶¶ 12, 15, 16.

Based on these events, Ms. Powell commenced the instant action in this Court, naming Denis McDonough, Secretary of the United States Department of Veteran Affairs, as Defendant. In her Amended Complaint for Employment Discrimination on the Basis of Sex, Disability and Retaliation ("Amended Complaint") [Doc. 16], Ms. Powell asserts a claim of sex discrimination (Count I), a claim of disability discrimination (Count II), and a claim of retaliation (Count III). Defendant has moved to dismiss the Amended Complaint in its entirety for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Ms. Powell opposes that motion.  Ms. Powell has also moved for leave to amend, seeking leave to file a second amended complaint.  Defendant opposes that motion.  Defendant's Motion to Dismiss and Ms. Powell's Motion for Leave to Amend are now before the Court.

**DISCUSSION**

I.    <u>Motion to Dismiss</u>

*Standard*

Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8 "does

3

not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*

at 678-79.  "Second, only a complaint that states a plausible claim for relief survives a motion to

dismiss."  *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her

claims "across the line from conceivable to plausible").  Accordingly, "where the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged – but it has not shown – that the pleader is entitled to relief."  *Id.* (citation omitted).

> In keeping with these two principles, the Court explained,
>
> a court considering a motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than conclusions, are not entitled to the
> assumption of truth.  When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they plausibly give rise
> to an entitlement to relief."
>
> *Id.* at 679.

*Discussion*

Based on the allegations described above, Ms. Powell brings in her Amended Complaint

claims of sex discrimination (Count I), disability discrimination (Count II), and retaliation

(Count III).  Defendant seeks dismissal of each of these claims for failure to state a claim upon

which relief can be granted.  As set forth herein, the Court agrees that each count of the

Amended Complaint, as currently pleaded, is subject to dismissal.

*Title VII Claims*

Ms. Powell brings her sex discrimination and retaliation claims under Title VII, which

makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate

against any individual with respect to [her] compensation, terms, conditions, or privileges of

employment" because of her sex, or to retaliate against an employee "because [she] has opposed

any practice made an unlawful employment practice by this subchapter."  42 U.S.C. §§ 2000e-

2(a)(1), 3(a).  "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).  Accordingly, the Court "start[s] by discussing the elements a plaintiff must prove to establish [] claim[s] for discrimination and retaliation under Title VII."  *Id.*

*Sex Discrimination*

In Count I, Ms. Powell asserts that Defendant discriminated against her "in the terms and conditions of her employment on the basis of her sex in violation of Title VII."  Doc. 16 ¶ 28. Specifically, she alleges that the sex discrimination "consisted of Defendant having [her] subjected to a hostile work environment as stated above, having derogatory comments made about Plaintiff 'giving blow jobs' while at work, being denied training, being reassigned multiple times and being suspended for 5 days."  *Id.* ¶ 29.  Accordingly, it appears that Ms. Powell asserts two theories of sex discrimination, namely that (1) she was subject to a hostile work environment because of her supervisor's derogatory sexual comments, and (2) she experienced adverse employment actions when she was denied training, reassigned, and suspended.  To state a discrimination claim based on a hostile work environment, a plaintiff must show that (1) "she is a member of a protected group," (2) "she was subject to unwelcome harassment," (3) "the harassment was based on [sex]," and (4) "due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment."  *Kline v. Utah Anti-Discrimination & Labor Div.*, 418 F. App'x 774, 780-81 (10th Cir. 2011).  To state a prima facie case of discrimination based on adverse employment actions, a plaintiff must establish that: (1) she "belongs to a protected class," (2) she "suffered an adverse employment action," and (3) "the adverse employment action occurred

under circumstances giving rise to an inference of discrimination." *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002).

In determining whether Ms. Powell's Amended Complaint sufficiently states plausible claims for relief, while she "is not required to set forth a prima facie case for each element, she is required to set forth plausible claims." *Khalik*, 671 F.3d at 1193. Accordingly, "conclusory and formulaic recitations" and "general assertions" of discrimination, "without any details whatsoever," are "insufficient to survive a motion to dismiss. *Id.* "While specific facts are not necessary, some facts are." *Id.* Thus, while the courts do not "mandate the pleading of any specific facts in particular," there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement." *Id.* at 1194. For instance, "a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory motive with something besides sheer speculation." *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019) (citation omitted). "A plaintiff should have – and must plead – at least some relevant information to make the claims plausible on their face." *Id.* (citation omitted).

First, as to the hostile work environment basis for her claim, Ms. Powell alleges that, for a four-month period, "[t]he hostile work environment consisted of derogatory sexual remarks made by Powell's Supervisor. One comment that was made several times was 'Powell was giving "blow jobs" while working.'" Doc. 16 ¶ 10. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021) (citation omitted). To state a hostile work environment claim, a plaintiff must allege enough facts to support a plausible inference that "the work environment is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the

6

[plaintiff's] employment and create an abusive working environment." *Brown v. LaFerry's LP Gas Co., Inc.*, 708 F. App'x 518, 520 (10th Cir. 2017).  "Proof of either severity or pervasiveness can serve as an independent ground to sustain a hostile work environment claim." *Throupe*, 988 F.3d at 1252.  Severity and pervasiveness "are, to a certain degree, inversely related:  a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute." *Brown*, 708 F. App'x at 521 (citation omitted).

"Determining whether the workplace is an objectively hostile work environment is not a mathematically precise test." *Iweha v. Kansas*, No. 21-civ-1228, 2022 WL 1684697, at *4 (D. Kan. May 26, 2022).  Accordingly, the court must examine the totality of the circumstances, and "consider such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Throupe*, 988 F.3d at 1252.  In making its determination, the court may consider "facially neutral abusive conduct . . . when that conduct is viewed in the context of other, overtly [] discriminatory conduct." *Brown*, 708 F. App'x at 522.

"[W]hen judging hostility, the court must ensure that it does not turn into a general civility code." *Iweha*, 2022 WL 1684697, at *4 (citation omitted).  "Conduct 'that is merely offensive' doesn't violate Title VII." *Id.* (citation omitted).  "Instead, Title VII only prohibits conduct that is severe or pervasive enough to create an *objectively* hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive." *Id.* (citation omitted) (emphasis added).

To state a plausible hostile work environment claim based on pervasive conduct, it is not sufficient to allege "a few isolated incidents of [sex-based] enmity or sporadic [sex-based] slurs.

Instead, there must be a steady barrage of opprobrious [sex-based] comments." *Herrera v. Lufkin Indus., Inc.,* 474 F.3d 675, 680 (10th Cir. 2007).  And to state a plausible hostile work environment claim based on severe conduct, allegations of isolated incidents are sufficient "only when they are 'threatening and severe' or 'especially egregious or extreme,' such as where the incident involves "some kind of physical assault."  *Brown*, 708 F. App'x at 522 (quoting *Morris v. City of Colo. Springs*, 666 F.3d 654, 666-67 (10th Cir. 2012)).

As noted above, the Amended Complaint contains only one paragraph to support Ms. Powell's hostile work environment claim, referring generally to "derogatory sexual remarks" made by an unidentified supervisor, and providing the substance of only one such remark, noting vaguely that it was made "several times," and failing to identify to whom the remark was made, in whose presence the remark was made, where it was made, and whether it was made to Ms. Powell and/or to others at her workplace.  The Court is deeply troubled by the one remark allegedly made and repeated about Ms. Powell that *is* identified in the Amended Complaint, namely that Ms. Powell was "giving 'blow jobs' while working."  It is utterly reprehensible and inexcusable for a supervisor to comment on an employee in this manner.  The Court would be perpetuating a legal fiction regarding the reality of women in the workplace if it failed to recognize that comments like these indeed affect the terms, conditions, and/or privileges of an individual's employment.  Nonetheless, the Amended Complaint lacks any factual detail about the making of this comment, the making of the other derogatory sexual remarks to which the Amended Complaint only generally mentions, the ways in which these comments combined with any other differential treatment that led to her eventual termination, or any other facts that, taken together in their totality, would support a plausible finding or inference of pervasive or severe harassment based on sex.  For this reason, Ms. Powell's allegations do not "cross the line from

8

possible to plausible." *Iweha*, 2022 WL 1684697, at *5.

For example, in *Brown*, the Tenth Circuit found the complaint insufficient to state a hostile work environment claim where it was based on three comments allegedly made to plaintiff during his six months as an employee, 708 F. App'x at 521-22, while in *Doe v. Hutchinson*, the Tenth Circuit found that the complaint sufficiently alleged a pervasively hostile environment, despite defendant's argument that he "directed only a single gender-based comment toward Doe," because "the complaint contain[ed] much more," alleging that defendant "'routinely and openly' spoke to and about female students in sexualized terms, and that he spoke about his own sexual acts in front of students including Doe."  728 F. App'x 829, 833 (10th Cir. 2018).  In short, the Amended Complaint is missing the "more" found in the cases where courts have concluded that plaintiffs alleged a plausible hostile work environment claim. *See, e.g.*, *Iweha*, 2022 WL 1684697 at *5-6 (denying motion to dismiss where plaintiff alleged two overtly racial comments about her national origin in addition to "steadily intensifying differential treatment by her supervisor and her white and American-born co-workers," that, read in totality, plausibly supported a hostile work environment claim) (collecting cases); *Scott v. HAMM*, No. 23-civ-2003, 2023 WL 2498927, at *4 (D. Kan. Mar. 14, 2023) (denying motion to dismiss where plaintiff did not "rely on isolated racial comments," but rather his complaint included "multiple instances of racial comments directed at Plaintiff," and also included "allegations of differential treatment and increasing hostility over a short two and a half month period and allegations that management ignored his complaints"); *Ballage v. Hope & Home*, No. 21-civ-1320, 2022 WL 3716519, at *7 (D. Colo. Aug. 29, 2022) (finding that plaintiff alleged sufficient facts where she alleged "multiple incidents of gender-specific, sexually charged conduct involving the same male supervisor, which made Plaintiff uncomfortable, and of which

Defendant's 'upper management' was 'thoroughly aware'").

In her response, Ms. Powell argues that the sexual remarks "denigrated her standing with other Officers." Doc. 29 at 6. This allegation, however, is absent from the Amended Complaint. "It is well settled that the nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Lee v. Regents of Univ. of California*, No. 04-civ-1087, 2005 WL 8163986, at *2 (D.N.M. May 17, 2005) (citation omitted). Accordingly, the Court "cannot consider the additional allegations presented in Plaintiff's response brief in deciding this Rule 12(b)(6) motion to dismiss." *Id.*; *see also Issa v. Comp USA*, 354 F.3d 1174, 1179 (10th Cir. 2003) (holding that a plaintiff may not rely on allegations in his reply brief to supplement the complaint).

Next, as to the adverse employment basis for her claim, Ms. Powell alleges that she was "denied training," "reassigned multiple times," and "suspended for 5 days." Doc. 16 ¶ 29. As noted above, to establish a prima facie case for discrimination based on these alleged actions, Ms. Powell must show that they "occurred under circumstances giving rise to an inference of discrimination." *Hysten*, 296 F.3d at 1181. And while she need not make her prima facie case at this stage, she is required to set forth a plausible claim; in other words, her Amended Complaint "must include enough context and detail to link the allegedly adverse employment action[s] to a discriminatory or retaliatory motive with something besides sheer speculation." *Bekkem*, 915 F.3d at 1275. Ms. Powell, however, fails to include "any details whatsoever of events leading up to her [being denied training, reassignments and suspensions]," and for this reason, her "general assertions of discrimination . . . are insufficient to survive a motion to dismiss." *Khalik*, 671 F.3d at 1193.

Ms. Powell's allegation that Defendant discriminated against her "in the terms and

conditions of her employment on the basis of her sex in violation of Title VII," Doc. 16 ¶ 28, is

"not entitled to the assumption of truth because [it is] entirely conclusory." *Khalik*, 671 F.3d at

1193.  Aside from this conclusory allegation, the Amended Complaint contains only the facts

that Ms. Powell was denied training, reassigned multiple times, and suspended for five days.

"There are no facts relating to the alleged discrimination," and "nothing other than sheer

speculation to link the [denial of training, reassignments, or suspension] to a discriminatory . . .

motive." *Id.* at 1194.  And while the Court does "not mandate the pleading of any specific facts

in particular, . . . [s]he should know why she believed that [the denial of training, reassignments,

and suspension were] connected with discriminatory animus." *Id.*  Yet she "offers none of this

detail." *Id.*  In short, Ms. Powell's claim is based solely on the fact that she is a woman and that

she was denied training, reassigned multiple times, and suspended five times.  "Without more,

her claim[ is] not plausible under the *Twombly/Iqbal* standard." *Id.*; *see also Smith v.

McDonough*, No. 20-civ-1321, 2021 WL 4656066, at *5 (D.N.M. Oct. 7, 2021) (finding

allegations in which "Plaintiff simply lists various kinds of facially race-neutral mistreatment he

claims to have experienced at work" to be "inadequate to make it plausible to believe that

Defendant's acts were racially motivated") (citation omitted).

  In her response, Ms. Powell contends that she has "pled sufficient evidence of actions

taken against her related to her sex," pointing to "factual statements" describing adverse actions

taken against her, namely that she was denied training, reassigned multiple times, and suspended

for five days, given a written reprimand, assigned extra duties, lost her arrest authority, did not

receive a set schedule, and was subjected to multiple investigations, in combination with "direct

evidence related to her sex because of the comments about 'blow jobs while working.'"  Doc. 29

at 6-7.  But the inappropriate remarks attributed to Ms. Powell's supervisor are "circumstantial or

11

indirect evidence, and not direct evidence of discrimination." *Ramsey v. City and Cnty. of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990).  As such, they do not, in and of themselves, "inevitably prove that [sex] played a part" in the adverse actions alleged by Ms. Powell and thus do not absolve her of the obligation to allege sufficient detail to link those adverse actions to a discriminatory animus.  *Id.*

Because Count I of the Amended Complaint, as pleaded, fails to adequately allege a sex discrimination claim based on either a hostile work environment or adverse employment actions, that Count will be dismissed.

*Retaliation*

In Count III, Ms. Powell asserts that Defendant retaliated against her "in the terms and conditions of her employment for opposing discrimination in the workplace in violation of Title VII."  Doc. 16 ¶ 36.  She further alleges that the retaliation "consisted of Defendant having Powell subjected to a hostile work environment as stated above, being denied training, being threatened by a supervisor, being reassigned multiple times and being suspended for five days." *Id.* ¶ 37.  To state a prima facie case of retaliation under Title VII, a plaintiff "must show: (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1219 (10th Cir. 2013).

While, as discussed above, the Court does "not mandate the pleading of any specific facts in particular," to satisfy the plausibility requirement in the context of a retaliation claim, a plaintiff "should know who she complained to about the discrimination, when she complained, and what the response was."  *Khalik*, 671 F.3d at 1194.  But Ms. Powell "offers none of this

12

detail." *Id.*  Indeed, the Amended Complaint does not include *any* factual statements describing Ms. Powell's engagement in protected opposition to discrimination.  The only allegation that even alludes to such engagement is as follows: "On May 5, 2019, Plaintiff was informed that she had been reassigned for reporting sexual comments."  Doc. 16 ¶ 20.  But this statement is not accompanied by any factual detail as to when Ms. Powell reported sexual comments, the temporal relationship between her reporting of sexual comments and her reassignment, the identity of the individual[s] to whom she reported those comments, the identity of the individual[s] who reassigned her, the identity of the individual[s] who informed her of the reason for her reassignment, or the relationship between the individual[s] to whom she reported sexual comments and the individual[s] who reassigned her.  Without any of this detail, Ms. Powell's claim of retaliation is "not plausible under the *Twombly/Iqbal* standard."  *Khalik*, 671 F.3d at 1194; *see McDermott v. GMC-100, LLC,* No. 14-civ-2296, 2014 WL 6895922, at *4 (D. Kan. Dec. 5, 2014) (dismissing retaliation claim where plaintiff "omit[ted] basic details and provide[d] no context to her claim of retaliation," failing even to allege "a basic time frame for when she complained, or to whom," as there was "no information in the Complaint that[could] allow a plausible inference of temporal connection between Plaintiff's complaint(s) and her termination"); *Browner v. Okla. ex rel. Univ. of Okla,*, No. 09-civ-896, 2009 WL 10702269, at *3 (Dec. 2, 2009) (finding complaint insufficient to state retaliation claim where plaintiff failed to set forth any factual allegations that showed that her complaints "were made in close temporal proximity to her discharge," or that the individuals who allegedly took adverse actions against her "knew about her complaints").

Crucially, there are no allegations as to whether the unnamed individual[s] who reassigned her knew that she had reported sexual comments.  To establish the third element of a

retaliation claim, namely, a causal connection between a plaintiff's protected opposition and the adverse action taken against her, a plaintiff "must show that the individuals who took adverse action against [her] knew of [her] protected opposition." *Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009); *see also Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019).  Here, Ms. Powell does not "allege any facts plausibly suggesting" that whoever was responsible for the adverse actions taken against her knew that she had reported sexual remarks.  *Zokari*, 561 F.3d at 1081.  For this reason alone, Ms. Powell "has not nudged [her] claims across the line from conceivable to plausible."  *Davis v. BAE Sys. Tech. Solutions & Servs. Inc.*, 764 F. App'x 741, 747 (10th Cir. 2019).

Nor is it clear from the Amended Complaint whether her reporting of sexual remarks in fact preceded her reassignment.  Similarly, it is impossible to discern whether the other adverse actions alleged in the Amended Complaint to support her retaliation claim, namely the denial of training, threats by a supervisor, reassignment, and suspension, occurred before or after she allegedly reported sexual comments.  Indeed, the very same adverse actions and hostile work environment that Ms. Powell appears to allege constitute retaliatory conduct are the same actions and environment that she alleges constitute the original discriminatory conduct of which she complained.  *Compare* Doc. 16 ¶ 37 with Doc. 16 ¶ 29.  But "[l]ogic dictates that [Defendant] could not have been motivated to take an adverse action as a result of something that happened after the alleged adverse action was taken."  *Burden v. Isonics Corp.*, No. 09-civ-1028, 2009 WL 3367071, at *6 (D. Colo. Oct. 15, 2009).  Accordingly, because "it is not possible to discern whether the protected activity preceded the alleged adverse action such that the activity could have resulted in the adverse action," the Amended Complaint "does not allege facts sufficient to state a plausible casual connection between the protected activity and the employment action."

*Fallon v. CTSC, LLC*, No. 13-cv-176, 2013 WL 9853376, at *12 (D.N.M. Sept. 26, 2013).

In her response, Ms. Powell argues that she has pled sufficient evidence of retaliation and a causal connection between her protected activity and the adverse actions, *see* Doc. 29 at 8-9, but does not address, much less effectively refute, the insufficiencies of her claim, as detailed above. And while she asserts in her response that the adverse actions occurred "after the complaints" she made to her supervisors, Doc. 29 at 8, this assertion is not included in the allegations in the Amended Complaint, and thus cannot be considered on the instant motion to dismiss. Further, as with her sex discrimination claim, Ms. Powell argues that she reported "derogatory sexual comments by her Supervisor," which is "direct evidence of discriminatory animus." *Id.* at 9. But as explained above, the inappropriate remarks attributed to her supervisor are "circumstantial or indirect evidence, and not direct evidence of discrimination." *Ramsey*, 907 F.2d at 1008.

Because Count III of the Amended Complaint fails to adequately allege a retaliation claim, that Count will be dismissed.

*Disability Claim*

In Count II, Ms. Powell asserts that "Defendant has discriminated against [her] in the terms and conditions of her employment on the basis of her disability in violation of the ADA." Doc. 16 ¶ 32. Specifically, Ms. Powell alleges that the disability discrimination "consisted of Defendant having Powell subjected to a hostile work environment as stated above, being denied training, being reassigned multiple times and being suspended for five days." *Id.* ¶ 33. As an initial matter, and as Ms. Powell concedes, it is the Rehabilitation Act, rather than the American with Disabilities Act ("ADA"), that applies to federal employees, including Ms. Powell. *Fulkerson v. Colvin*, No. 16-civ-889, 2018 WL 1726245, at *4 (D.N.M. Apr. 6, 2018) ("The

15

Rehabilitation Act of 1973, instead [of the ADA], is the appropriate statute to bring Plaintiff's disability discrimination claim because it is the exclusive remedy for federal employees alleging disability discrimination against the United States or its agencies.").  Construing Ms. Powell's claim as arising under the Rehabilitation Act, and assuming for purposes of this motion that she has adequately alleged a "disability" under that Act, the Court is still constrained to dismiss this claim.

To adequately state a disability discrimination claim, a plaintiff must "allege facts sufficient to establish [a] connection between her allegations and her disability." *Olonovich v. FMR-LLC Fidelity Investments*, No. 15-civ-599, 2016 WL 9777193, at *7 (D.N.M. June 21, 2016).  "In determining whether an actionable hostile work environment existed," the Court looks to whether, *inter alia*, "the plaintiff was subjected to [an] abusive environment *because of her [protected] class*." *Id.* (citation omitted) (emphasis added); *see also Bobelu-Boone v. Wilkie*, 526 F. Supp. 3d 971, 984 (D.N.M. 2021) (explaining that "[w]hile Plaintiff is not required to prove [] animus" toward her protected class, "she must still set out facts making it plausible to believe that Defendant's acts were [] motivated" by animus to that protected class); *Khalik*, 671 F.3d at 1194 (finding allegations insufficient to allege discrimination where, *inter alia*, plaintiff provided "nothing other than sheer speculation to link the arm-grabbing and/or termination to a discriminatory [] motive").  Here, Ms. Powell "alleges no facts that her supervisors or co-workers insulted or ridiculed her due to her alleged disability." *Olonovich*, 2016 WL 9777193, at *7.  "In fact, nowhere does [Ms. Powell] allege any facts that her disability was negatively commented on by anyone in her work environment." *Id.*  Nor does Ms. Powell allege any facts that would establish a connection between her multiple reassignments and/or her suspension and her disability.  In short, the Amended Complaint is devoid of allegations that, if proven, would

16

establish that Ms. Powell was subjected to a hostile work environment or otherwise discriminated against because of her disability.  Rather, Ms. Powell's claim is based solely on the facts that she is disabled, that she was subject to a hostile work environment, that she was reassigned, and that she was terminated.  Without "some further detail," her claim of disability discrimination "is not plausible under the *Twombly/Iqbal* standard."  *Khalik*, 671 F.3d at 1194.

Ms. Powell attempts to expand her disability discrimination claim by stating in her response brief that she "request[ed] a set schedule to accommodate her migraine disability," and that "[t]he action of not accommodating her requests for a set schedule to decrease the number of migraines was a discriminatory act."  Doc. 29 at 5-6.  The Amended Complaint, however, does not include these allegations; nor does Ms. Powell support her disability discrimination claim with factual allegations that, if proven, would establish that Defendant failed to accommodate her disability.  As noted above, this Court is not permitted to consider additional allegations presented in Ms. Powell's response brief in deciding the instant motion to dismiss, which considers only the allegations within the four corners of the Amended Complaint.  *Lee*, 2005 WL 8163986, at *2; *Issa*, 354 F.3d at 1179.

Because Count II of the Amended Complaint fails to adequately allege a disability discrimination claim, that Count will be dismissed.

II.    <u>Motion for Leave to Amend</u>

*Standard*

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that, absent circumstances that are not present here, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Whether to grant leave to amend is a decision "within the trial court's discretion."  *Smith*, 2021 WL 4656066, at *3 (citation omitted).

When a party seeks leave to amend, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

The Court, however, need not grant leave to amend "where amendment would be futile." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.,* 175 F.3d 848, 859 (10th Cir. 1999); *Foman v. Davis,* 371 U.S. 178, 182 (1962).  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."  *Jefferson Cnty.*, 175 F.3d at 859.  "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim."  *Smith v. McDonough*, 2021 WL 4656066, at *4 (citation omitted). Accordingly, this Court has discretion to deny Ms. Powell's request for leave to amend if the claims that she seeks to add to her Amended Complaint are insufficient. *Jefferson Cnty.*, 175 F.3d at 859.

*Discussion*

On her Motion for Leave to Amend, Ms. Powell seeks to file a Second Amended Complaint, which she attaches as Exhibit A to her Motion, noting that she has now received her Right to Sue on her Second EEO Charge.  Doc. 57.  Defendant argues that because the proposed Seconded Amended Complaint does not cure the defects in Ms. Powell's Amended Complaint and thus would be similarly subject to dismissal under Rule 12(b)(6) for failure to state a claim, the Court should deny the Motion for Leave to Amend.

The only new allegation in the proposed Second Amended Complaint is as follows:  "On November 7, 2020, Plaintiff was removed from federal service."  Doc. 57-1 ¶ 21.  Apart from alleging an adverse action (termination) that necessarily must have occurred after her alleged reporting of her supervisor's sexual remarks, the addition of this allegation does not remedy the Amended Complaint's identified insufficiencies.  As with the other adverse actions alleged in the

18

Amended Complaint, Ms. Powell does not provide facts detailing any connection between her removal from federal service and either her sex, her disability, or her engagement in protected opposition to unlawful discrimination.  Her proposed Second Amended Complaint fails to provide any of the factual detail missing from her Amended Complaint, which, as explained above, would be necessary to nudge her claims of sex discrimination, disability discrimination, and retaliation "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

Because Ms. Powell's proposed Second Amended Complaint presents no claims that are "plausible under the *Twombly/Iqbal* standard," allowing her to file her Second Amended Complaint, as drafted, would be futile.  *Khalik*, 671 F.3d at 1194.  The Court thus will deny Ms. Powell's request for leave to file her Second Amended Complaint.

Nevertheless, because the standards on dismissal and on granting leave to amend rest on the sufficiency of the pleadings rather than the severity of the events underlying those pleadings, and because the Court is concerned about the potential severity of those events, the Court will permit Ms. Powell an opportunity to file a motion for leave to file an amended complaint that complies with the relevant standards as detailed in this Opinion.  Ms. Powell has 60 days within which to file a motion for leave to amend, attaching a proposed amended complaint to such motion.  If she chooses to file a motion for leave to amend, and Defendant does not consent in writing thereto, it will be within the discretion of the Court to determine whether to grant leave to file the proposed amended complaint.

In drafting her proposed amended complaint, Ms. Powell must comply with the federal pleading standards outlined above, as those standards apply to the claims she raises in this action. Specifically, the Court urges Ms. Powell to remedy the specific factual deficiencies identified throughout this Opinion and use the caselaw described herein as a guide for ensuring that her

newly drafted allegations are sufficient.  Rather than merely stating the legal standard and alleging generalities, Ms. Powell should use her amended complaint as an opportunity to tell the details of her specific story.

If, however, Ms. Powell does not follow this guidance, and instead proposes an amended complaint containing the same deficiencies identified herein, her motion for leave to amend will be denied.  And if she does not timely file a motion to amend, this case will be dismissed.

## CONCLUSION

Ms. Powell's Amended Complaint fails to plausibly allege claims of sex discrimination, disability discrimination, or retaliation, and thus will be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.  Ms. Powell's proposed Second Amended Complaint would be equally subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim, and for this reason, the Court declines to grant Ms. Powell leave to file her proposed Second Amended Complaint. Nevertheless, Ms. Powell may file a Rule 15 motion for leave to amend to remedy the deficiencies in the Amended Complaint.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Amended Complaint for Failure to State a Claim and Memorandum in Support [Doc. 25] is **GRANTED;** Plaintiff's Opposed Motion to File Second Amended Complaint is **DENIED** [Doc. 57]; and Plaintiff will be given 60 days within which to file a Rule 15 motion for leave to amend.

DATED this 31st day of March 2023.

_____
MARTHA VAZQUEZ
Senior United States District Judge

20